W. P. PRICE v. DICKSON WHISNANT, GUARDIAN OF A. H. McRARY, NON COMPOS MENTIS; MATTIE McRARY, EARL BRADFORD AND FINLEY McGEE.

(Filed 22 November, 1950.)

**1. Evidence § 32—**

A party interested in the event of the action may not testify as a witness as to a transaction with the adverse party who at the time of trial has been adjudged *non compos mentis.* G.S. 8-51.

**2. Appeal and Error § 39e—**

The admission of incompetent testimony over objection cannot be held prejudicial when thereafter testimony of the same import is admitted without objection.

**3. Evidence § 7e—**

The showing of a *prima facie* case entitles plaintiff to go to the jury and shifts the burden of going forward with the evidence to defendant, but defendant is not bound to rebut the *prima facie* case but merely assumes the risk of an adverse verdict if he fails to do so.

**4. Adverse Possession § 9b—There must be pedis possessio under deed in order to entitle grantee to presumptive possession to outermost boundaries.**

Plaintiff went into possession under a deed conveying a particular tract under belief that the deed conveyed also a contiguous tract. Years later, upon discovering that the contiguous tract was not included in the description of this deed, he obtained a quitclaim deed to his own and the contiguous tract, and continued in possession thereafter for more than seven years. *Held:* There was no entry upon the land under color of the quitclaim deed, and therefore plaintiff is not entitled to the benefit of presumptive possession to the outermost boundary described in the quitclaim deed as an aid in establishing his claim to the contiguous tract by adverse possession.

APPEAL by defendants from *Bennett, Special Judge,* at June Term, 1950, of CALDWELL.

This is an action to recover damages for alleged trespass.

1. The plaintiff alleges he is the owner and in possession of the tract of land consisting of 175 acres in Little River Township, Caldwell County, N. C., described in the complaint by metes and bounds; that the defendants in person and through their agents, servants and employees have trespassed upon said lands and have cut and removed therefrom certain timber of the value of $120.00.

2. The plaintiff prays for a restraining order, restraining and enjoining the defendants and their agents, servants, employees, assignees and attorneys from any further trespass upon the lands described in the complaint; and, for judgment for double the value of the timber theretofore cut and removed from said premises by the defendants.

3. The defendants deny that the plaintiff is the owner of 64.4 acres of the land described in the complaint, and allege that the defendant A. H. McRary and his predecessors in title have owned and possessed the 64.4 acre tract of land adversely and under known and visible lines and boundaries, continuously for more than twenty years, and under color of title under known and visible lines and boundaries for more than seven years.

4. It is disclosed by the evidence that the plaintiff purchased a tract of land in 1913 from T. H. Broyhill, which is the land described in the plaintiff's complaint less the 64.4 acres now in dispute. The plaintiff offered evidence tending to show acts of ownership since 1913 of the land now in dispute. In 1923 he discovered that the 64.4 acre tract of

land was not included in the description in the deed from Broyhill to him. The plaintiff testified, however, that the deed to Broyhill did contain the disputed land. Even so, he thereupon obtained a quitclaim deed in 1923 to the entire 175 acre tract of land described in the complaint, not from Broyhill, but from the widow and heirs of Broyhill's predecessor in title and filed the same in the office of the Register of Deeds of Caldwell County on 13 January, 1926.

5. It is admitted that the defendant A. H. McRary is *non compos mentis,* and is now confined to the State Hospital in Morganton, N. C., and that Dickson Whisnant is his duly appointed guardian.

6. The defendants offered evidence tending to show that the defendant A. H. McRary is the grandson of Francis McRary; that Francis McRary obtained warranty deeds to the disputed lands in 1851 and 1876, which respective deeds were duly recorded on 5 August, 1851, and 29 November, 1877. After the institution of this action, the heirs of Francis McRary executed a quitclaim deed to A. H. McRary to all the tracts of land conveyed to Francis McRary in 1851 and 1876, being in excess of 200 acres, excepting therefrom certain lands conveyed by Francis McRary during his lifetime. This quitclaim deed was filed for record and duly recorded 31 December, 1949. The defendants contend that the descriptions contained in the deeds referred to in this paragraph include the 64.4 acres in dispute in this action. All these conveyances were offered in evidence by the defendants. Defendants also offered evidence tending to show acts of ownership of the disputed lands for a period of more than twenty years.

7. The plaintiff concedes in his brief that he rests his ownership to the disputed tract of land on his quitclaim deed and adverse possession for more than twenty years.

Issues were submitted to and answered by the jury as follows:

"1. Is the plaintiff the owner and entitled to the possession of the lands in dispute embraced by the letters B-2-P-D-E-F-G-B, as shown on the court map? Answer: Yes.

"2. If so, have the defendants trespassed upon the same? Answer: Yes.

"3. What damage is plaintiff entitled to recover of defendants? Answer: $1.00."

From the verdict and judgment entered thereon, the defendants appeal, and assign error.

*Folger Townsend and Fate J. Beal for plaintiff.*
*B. F. Williams and Hal B. Adams for defendants.*

DENNY, J. The defendants assign as error the admission of plaintiff's testimony, over objection, to the effect that the defendant A. H. McRary, who is now *non compos mentis,* sent for him "quite a few years ago" to meet him at a designated place; that he did so and McRary had Charles Barlow (now deceased), the County Surveyor, to run certain lines, one of which is now in dispute.

We think this evidence coming from the plaintiff was inadmissible. It was evidence concerning a transaction between the witness and the defendant, who is *non compos mentis.* Such testimony is inhibited by the provisions of G.S. 8-51. This statute expressly provides that "a party or person interested in the event . . . shall not be examined as a witness in his own behalf or interest . . . against the executor, administrator or survivor of a deceased person, or the committee of a lunatic . . . concerning a personal transaction or communication between the witness and the deceased person or lunatic . . ."

W. P. Price, the witness, is (a) a party to the action, (b) he is interested in the event of the action, and (c) the defendant A. H. McRary at the time of the trial below had been adjudged *non compos mentis,* and by reason of this fact was incompetent to testify in his own behalf; therefore, the plaintiff was likewise incompetent to testify in his own behalf concerning any transaction or communication between himself and this defendant. *Perry v. Trust Co.,* 226 N.C. 667, 40 S.E. 2d 116; *Wingler v. Miller,* 223 N.C. 15, 25 S.E. 2d 160; *Cartwright v. Coppersmith,* 222 N.C. 573, 24 S.E. 2d 246; *Wilder v. Medlin,* 215 N.C. 542, 2 S.E. 2d 549; *Poole v. Russell,* 197 N.C. 246, 148 S.E. 242. *Cf. Turlington v. Neighbors,* 222 N.C. 694, 24 S.E. 2d 648, and *Abernathy v. Skidmore,* 190 N.C. 66, 128 S.E. 475. Even so, the witness was permittd to testify thereafter without objection as to where the defendant had the County Surveyor run the disputed line and to testify as to the point where such line began, the bearing and distance thereof; that the line was marked with an axe and that the plaintiff and the defendant A. H. McRary were with the surveyor when the line was run.

The admission of this evidence without objection, rendered harmless the previously admitted evidence of similar import over objection. *S. v. Summerlin, ante,* 333, 60 S.E. 2d 322; *S. v. King,* 226 N.C. 241, 37 S.E. 2d 684; *S. v. Godwin,* 224 N.C. 846, 32 S.E. 2d 609. This assignment of error will not be sustained.

The appellants except and assign as error two excerpts from the charge, as follows:

"When the plaintiff has shown a *prima facie* title, it behooves the defendant to show a superior title. The burden of proof upon this issue is upon the plaintiff. The plaintiff alleges ownership and right to possession and the defendant denies it. Ordinarily the burden of proof never

shifts from the plaintiff, but our courts have said that when a plaintiff shows *prima facie* title, that then the burden of going forward with the evidence shifts to the defendant, and he must then rebut the evidence of the plaintiff. Showing *prima facie* title does not shift the burden of proof upon this issue, but imposes upon the defendant the burden of going forward with evidence." Exception No. 39.

"Now, if you are satisfied from the evidence and by its greater weight that the plaintiff received a quitclaim deed which described the property in question, and that he lived on a portion of the property described in the quitclaim deed, and actually occupied a portion of it, then the court instructs you that in that event that the actual occupancy of the plaintiff in such case would be deemed in our law to extend to the outermost limits of the description contained in the quitclaim deed, nothing else appearing, and it would then be necessary for the defendant to satisfy you from the evidence that he had held it adversely for the required statutory period of time. Or, the defendant would have to satisfy you that he has a superior title to the property." Exception No. 41.

The assignment of error based on the 39th exception challenges the correctness of the court's instruction as to the effect of a *prima facie* case. We think the instruction is inexact and may have misled the jury. When a plaintiff makes out a *prima facie* case, it simply means he has offered sufficient evidence in support of his allegations to warrant the submission of his case to the jury, and the jury may, but is not compelled to find for him. However, in such cases, the burden of going forward with the evidence shifts to the defendant, and if the defendant elects to offer no evidence he merely assumes the risk of an adverse verdict *Precythe v. R. R.,* 230 N.C. 195, 52 S.E. 2d 360; *Vance v. Guy,* 224 N.C. 607, 31 S.E. 2d 766; *Star Mfg. Co. v. R. R.,* 222 N.C. 330, 23 S.E. 2d 32; *McDaniel v. R. R.,* 190 N.C. 474, 130 S.E. 208; *Speas v. Bank,* 188 N.C. 524, 125 S.E. 398. "A *prima facie* showing merely takes the case to the jury, and upon it alone they may decide with the actor or they may decide against him, and whether the defendant shall go forward with evidence or not is always a question for him to determine." *Hunt v. Eure,* 189 N.C. 482, 127 S.E. 593.

Likewise, the assignment of error bottomed on the 41st exception challenges the correctness of the charge on constructive possession, when considered in light of the facts disclosed on the record.

It is settled law with us that where one enters into possession of land under a colorable title which describes the land by definite metes and bounds, and occupies and holds a portion of the land within such description, asserting ownership of the whole, by construction of law his possession is extended to the outer bounds of his deed, and possession so held adversely for seven years ripens his title to all the land embraced in the

description in his deed which is not adversely held by another. *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117; *Ware v. Knight,* 199 N.C. 251, 154 S.E. 35; *Ray v. Anders,* 164 N.C. 311, 80 S.E. 403; *Simmons v. Box Co.,* 153 N.C. 257, 69 S.E. 146; *Haddock v. Leary,* 148 N.C. 378, 62 S.E. 426.

In this case, however, the plaintiff went into possession of the 175 acres of land described in the complaint, except the 64.4 acre tract now in dispute, under a warranty deed executed by T. H. Broyhill in 1913. No one disputes the plaintiff's title to or the right of occupancy of the approximately 110 acres of land conveyed to him by Broyhill, which occupancy has continued uninterrupted and unchallenged to the present time.

Since the plaintiff owned the tract of land occupied by him at the time he obtained the quitclaim deed, he did not enter upon his own land thereunder, and his continued occupation thereof would not, by construction of law, extend his possession to the outermost boundaries of the description in the quitclaim deed. The quitclaim deed was color of title only to the 64.4 acres of land not contained within the boundaries of the Broyhill deed. Therefore, in order to establish title to the disputed tract of land, the plaintiff must do so under the rule of *pedis possessio,* or show entry upon the disputed tract under his quitclaim deed and actual occupancy of a portion thereof adversely, in order to extend the force and effect of his possession to the outer borders of the disputed lands contained within the description of the quitclaim deed.

In order "to ripen a colorable title into a good title, there must be such possession and acts of dominion by the colorable claimant as will make him liable to an action of ejectment. *This is said to be the test." Lewis v. Covington,* 130 N.C. 541, 41 S.E. 677. If the plaintiff had had no title to the 175 acres except under his quitclaim deed, and he had entered thereunder, the exception to the charge with respect to constructive possession by operation of law would be without merit; but he had a good title to the part of the boundary of which he had the actual possession, *Lewis v. Covington, supra; Elliott v. R. R.,* 169 N.C. 394, 86 S.E. 506, consequently such possession, by construction of law, did not extend to the outer boundaries of the quitclaim deed. At no time since 1913 could an action in ejectment have been maintained against the plaintiff with respect to his occupancy of the 110 acres purchased from Broyhill.

The defendants, for the reasons stated, are entitled to a new trial, and it is so ordered.

New trial.