ROY BURT ENTERPRISES, INC. v. WAYMON MARSH AND WIFE, SHIRLEY
MARSH

No. 561PA89

(Filed 7 February 1991)

Uniform Commercial Code § 23 (NCI3d)— action on debt—sale
  of fertilizer—revocation—summary judgment for plaintiff
  improper
      The trial court erred by granting plaintiff's motion for
  summary judgment against defendant Waymon Marsh in an
  action on an unpaid account for fertilizer where there were
  genuine issues of material fact with respect to whether there
  was a revocation of acceptance of the allegedly contaminated
  fertilizer constituting a defense to the payment of the debt.

      **Am Jur 2d, Sales §§ 1192, 1193; Summary Judgment § 27.**

  Justice MEYER concurring in result only.

  Justice MITCHELL joins in this concurring opinion.

ON discretionary review of an unpublished decision of the Court
of Appeals, 96 N.C. App. 275, 385 S.E.2d 818 (1989), affirming in
part and reversing in part the entry of summary judgment for
the plaintiff by Seay, J., at the 24 October 1988 Session of Superior
Court of MOORE County. Heard in the Supreme Court 11 October
1990.

  *Brown, Robbins, May, Pate, Rich, Scarborough & Burke, by
P. Wayne Robbins and Carol M. White, for the plaintiff-appellee.*

  *John Randolph Ingram for the defendant-appellant Waymon
Marsh.*

**ROY BURT ENTERPRISES v. MARSH**

[328 N.C. 262 (1991)]

MARTIN, Justice.

We hold that plaintiff was not entitled to summary judgment because there exist genuine issues of material fact.

In November 1987, plaintiff, Roy Burt Enterprises, Inc., sued defendants Waymon and Shirley Marsh for unpaid accounts for goods and services in the amount of $48,396.48. In response to the summons, Waymon Marsh wrote a letter to Mr. Roy Burt, president of Roy Burt Enterprises, stating that the fertilizer sold to him by plaintiff was contaminated and had damaged his crops, land and health and that he should not have to pay for it. This letter was dated 7 January 1988 and was filed with the Moore County Clerk of Court. The letter, and others written by Waymon Marsh, were verified as affidavits on 18 October 1988 and were before the trial court at the summary judgment hearing. The court granted plaintiff's motion for summary judgment after a hearing on 24 October 1988. From the court's order, defendants appealed. The Court of Appeals reversed the court's order of summary judgment against defendant Shirley Marsh, but affirmed as to defendant Waymon Marsh. We allowed Waymon Marsh's petition for discretionary review and now reverse the Court of Appeals as to the action against defendant Waymon Marsh.

The rules governing summary judgment are now familiar learning and we need not repeat them here. *Investors Title Ins. Co. v. Herzig*, 320 N.C. 770, 360 S.E.2d 786 (1987). We hold that based upon the materials before the trial court genuine issues of material fact exist which defeat plaintiff's motion for summary judgment. Summary judgment in this case was inappropriate.

In order to recover, plaintiff must prove (1) acceptance by the buyer of the goods; (2) the price of the goods accepted; (3) the past due date of the price; and (4) failure of buyer to pay. N.C.G.S. § 25-2-709(1) (1986); *Manufacturing Co. v. Manufacturing Co.*, 37 N.C. App. 726, 247 S.E.2d 1, *appeal dismissed*, 295 N.C. 734, 248 S.E.2d 864 (1978). *See also* N.C.G.S. § 8-45 (1986). Defendant admitted the sale and delivery of the fertilizer in the letter serving as his answer. However, the letter stated: "I, Waymon Marsh, feel I should not have to pay for fertilizer I purchased that was contaminated. . . . I believe it has damaged my farm land and pond, and cows and my health." Defendant claimed that the alleged contamination killed plant and animal life in the pond, and when the water was used for irrigation, it caused further damage on

the land. Defendant asserted that the fertilizer was not fit for the purposes for which it was sold and contained ingredients not listed on the label. Defendant stated that the "fertilizer does not guarantee a farmer to make his pounds on his farm. It guarantees whats [sic] in the bag."

The Uniform Commercial Code provides that under some circumstances a buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him. N.C.G.S. § 25-2-608 (1986). The contents of defendant's letter, verified as an affidavit, create material issues of fact as to whether defendant revoked his acceptance of the allegedly contaminated fertilizer. Defendant put plaintiff on notice of his defense in his letters, later incorporated into his affidavit.

Defendant's forecast of the evidence shows that the fertilizer was accepted without knowledge that the goods did not conform to the contract. It further shows that the contamination of the fertilizer could not reasonably be discovered until it was spread on defendant's cropland. N.C.G.S. § 25-2-608(1)(b). Formal notice that acceptance is being revoked is not necessary. Any conduct by the buyer manifesting to the seller the buyer's dissatisfaction with the goods and his expectation of redress is sufficient. *Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E.2d 161 (1972). A tender of the goods to the seller is not required in order to revoke acceptance. *Id.* at 397, 186 S.E.2d at 168.

By at least 1985 plaintiff knew of the defective fertilizer and undertook to get relief from the manufacturer. Further, the evidence indicates that the alleged revocation of acceptance occurred within a reasonable time after the buyer discovered that the fertilizer was contaminated. N.C.G.S. § 25-2-608(2). Defendant's evidence also raises a material question of fact whether there was any substantial change in the condition of the fertilizer before defendant notified the seller of the contamination. N.C.G.S. § 25-2-608(2). This part of the statute is for the protection of sellers where the buyer allows the goods to deteriorate, creating the risk that the alleged defect was caused or aggravated by the buyer's action or inaction. N.C.G.S. § 25-2-608 comment 6 (1986). In this case such a risk was not present, since the alleged defect could not have been caused or aggravated by defendant's spreading of the fertilizer on his cropland. Further, the alleged lack of conformity here could not be discovered without difficulty except by spreading the fertilizer

**ROY BURT ENTERPRISES v. MARSH**

[328 N.C. 262 (1991)]

upon the cropland. The seller contemplated that the buyer would use the fertilizer upon the cropland, and it was contaminated before defendant applied it. *See Warren v. Guttanit, Inc.*, 69 N.C. App. 103, 317 S.E.2d 5 (1984); *Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos.*, 803 F.2d 1160 (11th Cir. 1986).

We hold that there are genuine issues of material fact with respect to whether there was a revocation of acceptance constituting a defense to the payment of the debt, and therefore the trial court erred in entering summary judgment for the plaintiff.

We emphasize that the only issue before this Court in the present appeal is whether the trial court erred in granting summary judgment for plaintiff in the action on account. We do not express any opinion concerning any possible products liability claim or other claims that defendants may have against plaintiff. Accordingly, the issue of the applicability of N.C.G.S. Chapter 99B is not before this Court for determination in the instant appeal, *cf. Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 354 S.E.2d 495 (1987) (in products liability actions arising from breaches of implied warranties, the defenses provided by N.C.G.S. § 99B-2(a) are available), nor is any potential counterclaim seeking damages for breach of contract under theories based on warranty provisions of the Uniform Commercial Code.

Because the Court of Appeals' decision with respect to plaintiff's action against the defendant Shirley Marsh is not before this Court for review, we do not disturb the Court of Appeals' decision with respect to her. The decision of the Court of Appeals with respect to Waymon Marsh is reversed, and the cause is remanded to that court for further remand to the Superior Court, Moore County, for further proceedings not inconsistent with this opinion.

Reversed in part and remanded.

Justice MEYER concurring in result only.

Believing, as I do, that this Court should not decide this case on the basis of N.C.G.S. § 25-2-608(2) of the UCC (revocation of acceptance), but rather on the basis of N.C.G.S. § 25-2-314 (implied warranty: merchantability), and that summary judgment should have been entered for the defendant, I concur only in the result that the decision below should be reversed and the case remanded. Like the majority, I would reverse and remand this case, but for

an entirely different reason, which would produce an entirely different resolution of the case.

The "revocation of acceptance" theory is simply inapplicable here. Revocation requires a twofold finding:

> Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it *and before any substantial change in condition of the goods* which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

N.C.G.S. § 25-2-608(2) (emphasis added). The latter element cannot be found in this case. There had been a definite "substantial change" in the goods by the time the defect was discovered. The fertilizer was spread and absorbed into the earth and, indeed, by the season's crops, the animals that consumed the crops, the water in the pond, and the fish in the water.

N.C.G.S. § 25-2-608(2) (revocation of acceptance) protects sellers by allowing revocation where the buyer "returns" the merchandise to the seller. *See Village Mobile Homes v. Porter*, 716 S.W.2d 543 (Tex. Ct. App. 1986) (statute intended to protect the seller from changes which deteriorate the value of the goods). This contention is supported by the plain language of the statute and the first sentence of comment 6, which states that the policy of the section is to seek substantial justice in regard to the condition of goods "*restored to the seller.*" We do not have that situation here. It is true that comment 6 states that "[w]orthless goods . . . need not be offered back." In such a situation, the central issue of fact becomes whether the goods here were worthless. Unless the worthlessness of the goods is stipulated to or found as a fact (and it was not here), revocation of acceptance has not been proven.

Defendant has also pled failure of consideration as a defense. His forecast of evidence on the issues of breach of implied warranty *and* failure of consideration is unrefuted. The implied warranty of merchantability has been breached, and the consideration for the contract has failed.

Therefore, under either the theory of breach of the implied warranty of merchantability or failure of consideration, summary judgment should have been entered for defendant. Although the defendant, Mr. Marsh, did not move for summary judgment, he

NASH v. MOTOROLA COMMUNICATIONS AND ELECTRONICS

[328 N.C. 267 (1991)]

was nevertheless entitled to the entry of such a judgment in his favor on the forecast of evidence presented here. Under Rule 56 of our Rules of Civil Procedure, a motion for summary judgment may be entered in favor of "any party." Rule 56 specifically provides that: "Summary judgment, when appropriate, may be rendered against the moving party." N.C.R. Civ. P. 56(c). I would reverse the decision below and remand the case for entry of summary judgment for the defendant.

Justice MITCHELL joins in this concurring opinion.